AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Western District of Arkansas
Fort Smith Division

US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

OCT - 6 2021

By  JAMIE GIANI, Clerk
    Deputy Clerk

In the Matter of the Search of )
)
Silver Samsung Galaxy J7, )
Serial Number R28K13M9RBH )
currently in custody of Homeland Security )
Investigations, Fayetteville, Arkansas, )
further described in Attachment A )

Case No. 2:21CM-93

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe property to be searched and give its location)*: **SEE ATTACHMENT A.**

located in the Western District of Arkansas, there is now concealed *(identify the person or describe the property to be seized)*: **SEE ATTACHMENT B.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

■ evidence of a crime;

■ contraband, fruits of crime, or other items illegally possessed;

■ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252(a)(4) | Possession of Child Pornography |

The application is based on these facts: **SEE AFFIDAVIT OF HSI SPECIAL AGENT MARK ADAIR**

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Mark Adair, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: October 6, 2021

*Judge's signature*

City and state: Fort Smith, Arkansas

Mark E. Ford, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Mark Adair, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the seizure and examination of property, namely a silver Samsung Galaxy J7, Serial Number: R28K13M9RBH (hereinafter referred to as "SUBJECT ITEM"), which is currently in the possession of Homeland Security Investigations (HSI), and the extraction of electronically stored information, more fully described in Attachment B, from the SUBJECT ITEM.

2. I am a Special Agent of HSI, a component of the United States Department of Homeland Security; and I have been employed in this capacity since June 2002. I am a graduate of the Criminal Investigator Training Program and the U.S. Immigration and Customs Enforcement Special Agent Training Academy. As a result of my employment with HSI, my duties include, but are not limited to, the investigation and enforcement of Titles 8, 18, 19, 21 and 31 of the United States Code (U.S.C.). I am an "investigative or law enforcement officer of the United States" within the meaning defined in 18 U.S.C. § 2510(7), in that I am an agent of the United States authorized by law to conduct investigations of, and make arrests for, federal offenses.

3. As part of my duties as a HSI agent, I investigate criminal violations relating to the sexual exploitation of children, including the illegal production, distribution, transportation, receipt, and possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2252, and 2252A. I have received extensive training in the area of child exploitation and have observed and reviewed numerous examples of child pornography, as defined in 18 U.S.C. § 2256, in all forms of media. I

have been involved in numerous child pornography investigations, and I am familiar with the tactics used by individuals who collect and distribute child pornographic material.

4. This Affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. I am submitting this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant to seize and examine the SUBJECT ITEM; and extract electronically stored information from the SUBJECT ITEM. On September 21, 2021, the SUBJECT ITEM was seized by Special Agent Mark Adair from the possession of Raymond Frank WATSON, pursuant to probable cause that the SUBJECT ITEM contains or has contained child sexual exploitative material (CSAM). The SUBJECT ITEM is now being stored as evidence at HSI, Fayetteville, Arkansas office.

## STATUTORY AUTHORITY

6. Title 18, United States Code, Section 2252(a)(4) prohibits a person from knowingly possessing or accessing with intent to view a matter which contain[s] any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means including by computer if (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct.

7. "Child Pornography" is defined in Title 18, United States Code, Section 2256(8) as any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or

modified to appear that an identifiable minor is engaged in sexually explicit conduct.

8. Title 18, United States Code, Section 2256(2)(A) defines "sexually explicit conduct" to mean actual or simulated (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same sex or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person.

## PROBABLE CAUSE

9. On May 11, 2021, your Affiant received a CyberTip[1] from National Center for Missing and Exploited Children (NCMEC). The CyberTip had been filed by Google, Inc. (Google). According to the CyberTip, on April 20, 2021, at 09:26:15 UTC, Google reviewers learned of material believed to be CSAM stored on a Google Drive and a Google Photos account subscribed to by Raymond WATSON. Google reported the following account descriptors:

    a. Mobile Phone: +1479651XXXX (Verified 04-26-2019 23:42:49 UTC)
    b. Date of Birth: 05-XX-1960
    c. Email Address: f2fwatson1978@gmail.com (Verified)
    d. Email Address: Fwstson53@yahoo.com

10. In reviewing the suspected CSAM material identified by Google, your Affiant noted the files and based on your Affiant's training and experience believe them to meet the federal definition of child pornography. Two of these files are described below:

    I. Filename: Google-CT-RPT-2ce470640380e244ae6940ab671b608f-2015-09-20 21.49.40_Creampie.png
        a. Original Filename Associated with File: 2015-09-20 21.49.40_Creampie.png
        b. This image file depicted a young female, between the ages of 7 and 10 years old, laying fully nude on the floor with her

---

[1] A CyberTip, for the purposes of this affidavit, is an electronically delivered notice that a particular account may have transmitted, possessed or otherwise contained CSAM.

|       |           | vagina fully exposed. It appeared that semen was placed on her vagina for the photograph. |
|-------|-----------|---|
| II.   | Filename: | Google-CT-RPT-4d3d5b55417ed4caba988b54cbc3ffd6-tumblr_pe80zvaIcF1xbcq72.mp4 |
|       | a.        | Original Filename Associated with File: tumblr_pe80zvaIcF1xbcq72.mp4 |
|       | b.        | This video is approximately 19 seconds in length and depicts a young female between the ages of 7 and 10 years old performing oral sex on the penis of an unidentified male. |

11. The CyberTip provided by NCMEC described above also contained an additional six (6) CyberTip reports, which were reported to NCMEC by Google reviewers between April 19, 2021, and April 27, 2021, respectively. In reviewing the additional six CyberTip reports, your Affiant observed the relevant Google account was subscribed to WATSON. Moreover, each of the CyberTip leads contained CSAM that was located within the Google Drive and/or Google Photos application.

12. On May 18, 2021, your Affiant served a Department of Homeland Security (DHS) summons for records upon Verizon seeking subscriber information for telephone number 479-651-XXXX. On May 20, 2021, Verizon complied with the subpoena and provided the following information:

- Account Established: October 2017
- Established By: Lesa AUTRY[2]
- Address of Record: XXX J Street, Barling, Arkansas

13. On May 18, 2021, a review of law enforcement records revealed that telephone number (479-651-XXXX) was provided to the Fort Smith Police Department on July 29, 2018, by a complainant named "Frank Watson". In reviewing the report, the complainant (WATSON) reported loud music at a residence in Fort Smith, Arkansas.

---

[2] Lesa AUTRY is the girlfriend and cohabitant of WATSON.

14. On May 18, 2021, your Affiant requested and obtained utility records for XXX J Street, Barling, Arkansas. In reviewing the responsive information, your Affiant noted that WATSON's telephone number (479-651-XXXX) was on the record.

## INTERVIEW OF WATSON

15. On September 21, 2021, your Affiant and HSI Special Agent J. Pryor contacted WATSON at his place of employment in Pocola, Oklahoma. After identifying themselves to WATSON, your Affiant informed him of his rights per *Miranda*. WATSON, upon being informed of his rights, freely and voluntarily agreed to speak with investigators. During the interview, WATSON initially denied knowledge of the child sexual assault material on his Google accounts. However, WATSON later changed his statement and admitted to using the account identified by Google in the CyberTip and to receiving child sexual assault material during between 2018 and 2019. WATSON explained that he received numerous emails from a female residing in "Croatia" that contained the CSAM. WATSON further admitted to downloading the CSAM upon receipt, despite, according to him, knowing that he should not (have downloaded the material). Lastly, WATSON confirmed that his cellular telephone number was (479-651-XXXX).

## EXECUTION OF FEDERAL SEARCH WARRANT

16. On September 21, 2021, your Affiant, along with other law enforcement officers, executed a federal search warrant (2:21cm81) at WATSON's residence, XXX J Street, Barling, Arkansas. WATSON accompanied law enforcement to his residence by driving his own vehicle from his place of employment to the house. Your Affiant and Special Agent Pryor followed WATSON on the drive from his place of employment to the residence. WATSON subsequently provided access to the residence through the garage door.

17. An initial walk-through of the residence revealed none of the other known occupants were present. A search of the residence then occurred in accordance with the lawfully issued federal search warrant. Multiple electronic devices were located in the residence, which WATSON stated he utilized. Specifically, WATSON identified two cellular telephones stored near his bedside that possibly contained CSAM. The items were seized and transported to the HSI Fort Smith office for processing before being transferred to the HSI Fayetteville, Arkansas for examination by Computer Forensic Analysts.

18. Your affiant obtained voluntary consent from WATSON, which was documented on a Consent to Search form signed by WATSON to search the SUBJECT ITEM described in Attachment A. During the initial preview of the device in the field, Special Agent Pryor was made aware of several age difficult images of pornography which appeared to have titles believed to be in Eastern European language. At that point, Special Agent Pryor advised WATSON that the phone would be seized due to WATSON's prior admission of receiving CSAM from a woman residing in Croatia and the initial images seen during the initial field preview of the SUBJECT ITEM.

## TECHNICAL BACKGROUND

19. Based on my training, knowledge, and experience, I am aware that individuals who commit online sexual exploitation offenses involving minors will often collect and/or view child pornography on their cellular devices, for several reasons:

    a. They may receive sexual gratification and satisfaction, and/or fantasize about sexual contact with minors by viewing minors engaged in sexual activity or sexually suggestive poses;

    b. They may collect sexually explicit or suggestive materials in a variety of media for their own sexual arousal and gratification.

      c.      They almost always possess and maintain their material in the privacy and security of their home or some other secure location. Child pornography distributors/collectors typically retain recordings, mailing lists, child erotica and store their child pornography amongst other, otherwise legal media or files. Digital evidence, like child pornography contraband, is different than traditional evidence that can be concealed, sold, used and/or destroyed and is not as volatile as other illegal items like narcotics; and

      d.      Likewise, collectors of child pornography often maintain their collections that are in a digital or electronic format in a safe, secure, and private environment, such as a cellular phone and surrounding area. These collections are often maintained for several years and are kept close by to enable the owner to view the collection, which is valued highly.

      e.      They also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

      f.      They generally prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

20.      Increasingly, individuals who produce, distribute, transport, receive, or possess child pornography, or who attempt to commit these crimes, use mobile computing devices (cellular

devices) to do so. These portable devices can connect to the Internet at an individual's residence, or also through routers and wireless routers in various public and private locations. Mobile computing devices and electronic storage media such as laptops, tablets, smart phones, and flash drives, often travel with the person utilizing them and are commonly found in residences during search warrants.

21.     I know computers serve four basic functions in connection with child pornography: production, communication, distribution, and storage. Photographs and other digital images must be stored as data on a computer or other digital media device using specialized software to transfer images from a digital camera to a computer, or other electronic storage device, or by transferring images saved onto a media card to a computer or electronic storage device.

22.     I know that if a child pornography viewer chooses to upgrade their electronic storage device, it is a simple process to transfer images from one device to another device. After the photograph or other image has been transferred onto the computer, the computer stores the data from the image as an individual "file." Such a file is generally known as a "GIF" (Graphic Interchange Format) or "JPEG" (for the Joint Photographic Experts Group, which wrote the standard file, recognizable by the ".gif" or ".jpg" file extensions (hereinafter referred to as an "image file.") Computers are capable of rendering the digital image on a computer screen, transferring the image to another computer, and/or printing the image.

23.     I know that computer hardware, other digital devices, software, and electronic files are important to a criminal investigation in two distinct ways: the objects themselves may be contraband, evidence, instrumentalities, or fruits of a crime; and/or the objects may be used as storage devices that contain contraband, evidence, instrumentalities, or fruits of crime in the form of electronic data.

24. In addition to offenders who collect and store child pornography, law enforcement has encountered offenders who obtain child pornography from the Internet, view the contents, and subsequently delete the contraband, often after engaging in self-gratification. In light of technological advancements, increasing Internet speeds and worldwide availability of child sexual exploitative material, this phenomenon offers the offender a sense of decreasing risk of being identified and/or apprehended with quantities of contraband. This type of consumer is commonly referred to as a 'seek and delete' offender, knowing that the same or different contraband satisfying their interests remain easily discoverable and accessible online for future viewing and self-gratification. I know that, regardless of whether a person discards or collects child pornography he/she accesses for purposes of viewing and sexual gratification, evidence of such activity is likely to be found on computers and related digital devices, including storage media, used by the person. This evidence may include the files themselves, logs of account access events, contact lists of others engaged in trafficking of child pornography, backup files, and other electronic artifacts that may be forensically recoverable.

25. Based on my training and experience, and that of computer forensic agents that I work and collaborate with on a daily basis, I know that every type and kind of information, data, record, sound, or image can exist and be present as electronically stored information on any of a variety of computers, computer systems, digital devices, and other electronic storage media. I also know that electronic evidence can be moved easily from one digital device to another. As a result, I believe that electronic evidence may be stored on the digital device ("SUBJECT ITEM") seized.

26. Based on my training and experience, and my consultation with computer forensic agents who are familiar with searches of computers, I believe there is probable cause to believe that the items set forth in Attachment B will be stored in those digital devices for a number of reasons,

including but not limited to the following:

    a. Once created, electronically stored information (ESI) can be stored for years in very little space and at little or no cost. A great deal of ESI is created, and stored, moreover, even without a conscious act on the part of the device operator. For example, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache," without the knowledge of the device user. The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages or if a user takes affirmative steps to delete them. This ESI may include relevant and significant evidence regarding criminal activities, but also, and just as importantly, may include evidence of the identity of the device user, and when and how the device was used. Most often, some affirmative action is necessary to delete ESI. And even when such action has been deliberately taken, ESI can often be recovered, months or even years later, using forensic tools.

    b. Wholly apart from data created directly (or indirectly) by user-generated files, digital devices - in particular, a computer's internal hard drive - contain electronic evidence of how a digital device has been used, what it has been used for, and who has used it. This evidence can take the form of operating system configurations, artifacts from operating systems or application operations, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible for a user to use such specialized software to delete this type of information - and the use of such special software may itself result in ESI

that is relevant to the criminal investigation. In particular, to properly retrieve and analyze electronically stored (computer) data, and to ensure accuracy and completeness of such data and to prevent loss of the data either from accidental or programmed destruction, it is necessary to conduct a forensic examination of the computers. To affect such accuracy and completeness, it may also be necessary to analyze not only data storage devices, but also peripheral devices which may be interdependent, the software to operate them, and related instruction manuals containing directions concerning operation of the computer and software.

27. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the SUBJECT ITEM was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the SUBJECT ITEM because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record

information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

28. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the SUBJECT ITEM consistent with the warrant. The examination may require authorities to employ techniques,

including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the SUBJECT ITEM to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

29. Based on the National Center for Missing and Exploited Children (NCMEC) Cyber Tipline Reports, information discovered from the search warrant executed on the Google account of Raymond WATSON, and admissions made by Watson during a mirandized interview, I submit that this Affidavit supports probable cause for a search warrant authorizing the examination of the SUBJECT ITEM described in Attachment A to seek the items described in Attachment B as there is probable cause to believe that the SUBJECT ITEM contains evidence of violations of Title 18, United States Code, Section 2252 (a)(4).

*[signature]*

Mark Adair, HSI Special Agent

Sworn and subscribed before me this 6th day of October 2021.

*[signature]*

Honorable Mark E. Ford
United States Magistrate Judge

## ATTACHMENT A

The property to be searched is described as a silver Samsung Galaxy J7, Serial Number: R28K13M9RBH cellular telephone. The cellular telephone is currently in the possession of Homeland Security Investigations, located at: 3419 N. Plainview Avenue, Fayetteville, Arkansas. This warrant authorizes the forensic examination of the described and photographed cellular telephone for the purpose of locating the electronically stored information described in Attachment B.





## ATTACHMENT B
## ITEMS TO BE SEARCHED FOR AND SEIZED

a. Any and all images of suspected child pornography and files containing images of suspected child pornography, any and all images believed to be an attempt to produce child pornography, in any form wherever it may be stored or found including, but not limited to:

   i. originals, thumbnails, and copies of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256; and

   ii. videos (AKA motion pictures, films, film negatives), and other recordings or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

   iii. Images self-produced of the defendant and minors, and attempts to take or produce such;

   iv. Images of children, nude or otherwise, possessed, sent, received, or via message, email, or otherwise stored on the phone

   v. Internet history, including CACHE memory related to internet searches for child pornography or websites that could pertain such.

b. information or correspondence pertaining to the solicitation of others for sexual activity involving minors, and any and all information, messages, etc. related to the sexual exploitation of children, including but not limited to:

   i. correspondence including, but not limited to, electronic mail, chat logs, and electronic messages, text messages, establishing possession, identity of individuals, access to, or transmission through interstate or foreign commerce, including by United States mail or by computer, of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

   ii. records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission through interstate or foreign commerce including by United States mail or by computer of any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

    iii.    Any and all address lists, names, contact information of minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256; and/or any information evidencing contact or correspondence with minors or adults in whatever form.

    iv.    Any and all chat log, text messages, email, or any type of communication in any form that is related to the sexual exploitation of minors for sexual purposes or related to the production, distribution, or possession of child pornography.

c.    Any and all security devices, to include encryption devices, needed to gain access to the devices;

d.    Any and all address lists, names, contact information of minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256; and/or any information evidencing contact or correspondence with minors or adults in whatever form.

e.    Any and all recordings, including those made by the defendant or the minor victim, or anyone else that depicts the defendant or others engaging in sexually explicit conduct of any type.

f.    In searching the data, the computer personnel may examine and copy all of the data contained in the subject item to view their precise contents and determine whether the data falls within the items to be seized. In addition, the examining personnel may search for and attempt to recover deleted, hidden, or encrypted data to determine whether the data falls within the list of items to be seized.